### BLECKELEY v. BRANYAN.

1. A mortgagee who buys the mortgaged estate by private agreement or under legal authority other than a decree of foreclosure, extinguishes the debt and lien.
2. A mortgagee inquired as to liens upon the mortgaged property, and being informed by the sheriff that there were no executions in his office, he took a conveyance some three months afterwards of the legal title from the mortgagor in satisfaction of his mortgage, but subject to the lien of another mortgage which the mortgagor covenanted was the only incumbrance on the land; and the mortgage held by this purchaser was thereupon surrendered to the mortgagor. But between the date of this inquiry and of this conveyance, judgments were obtained against the mortgagor, and executions lodged. *Held*, that the mortgage of the purchaser was satisfied, and that the judgments had liens on the land superior to the title of this purchaser.
3. This case distinguished from *Agnew* v. *Railroad Company*, 24 S. C., 18.
4. Petition for rehearing refused.

Before HUDSON, J., Abbeville, October, 1886.

This was an action by Bleckeley, Brown & Fretwell against D. S. Branyan and others. The appeal was from the following decree:

Upon the foregoing statement of facts, I am of the opinion

that the plaintiffs are entitled to the relief prayed for. It is very clear that it was not the intention of the parties that the legal and equitable title should merge in the plaintiffs, so as to open the way for the enforcement of intervening liens. The contemporaneous instrument of writing guaranteeing that no such intervening liens existed, forms a part of the contract as much so as if incorporated in the body of it, and is equivalent to a covenant or stipulation that as against any such possibility the plaintiffs should not lose the advantage of their prior liens. I regard the facts of this case and its equities as capital as were the equities of the recent case of *Agnew* v. *The C., C. & A. R. R. Co.*, 24 *S. C.*, 18. In fact, it is stronger, because Agnew was a purchaser at an execution sale, claiming to recover the possession of the land. He had purchased Hoffman's equity of redemption, and it would seem might have recovered subject to the company's mortgage, admitting that there was no merger. But not even this was allowed. There was a dissenting opinion by Justice McIver which we have not seen.

It is said that these judgment creditors of Branyan should not suffer from the false certificate he gave the plaintiffs, as they had no part in the fraud. This is true, but it is equally true that they should not gain by it. The plaintiffs are charged in the argument with being careless in their inquiry on this subject. We do not think so entirely. On the contrary, they did do much to inform themselves, so as to provide against intervening liens, and after inquiry were cautious to stipulate against such. I take it that equity will not merge the fee and equitable estate where liens intervene, and where the parties clearly do not intend that the prior lien shall be destroyed to make way for subsequent liens. I regret my absolute want of time to review and discuss the authorities here at length. But in support of this view I cite first of all the recent decision above, and the case of *Trimmier* v. *Vise*, 17 *S. C.*, 501; *Jones Mort.*, §§ 870–873. And most especially, if there be fraud in the mortgagor, will equity prevent a merger so as to protect against intervening liens. See *Jones Mort.*, §§ 966–970.

It is therefore ordered, adjudged, and decreed, that to the extent of the price paid by the plaintiffs to Branyan for the said

land, their mortgages still uncancelled on record be set up as subsisting liens thereon as against the judgments of the defendants and prior thereto. It is further ordered that the said defendants, judgment creditors, be perpetually enjoined, as likewise their servants and agents, and the said sheriff DuPre, from selling anything more than the equity of redemption of the said D. S. Branyan in said lands and subject to the prior mortgage liens of said plaintiffs, and that they, the said judgment creditors, and the said Branyan, do pay the costs of this action. If the future emergency require it, and the plaintiffs so desire, they are at liberty to ask for further relief by way of foreclosure and sale, or as they may desire under these proceedings.

*Messrs. Benet & Smith*, for appellants.

*Mr. B. F. Whitner*, contra.

April 19, 1887. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. At the February term of the court for Abbeville in 1885, Sarah J. Martin, as administratrix, and A. T. Armstrong, each recovered judgment against their co-defendant, D. S. Branyan. Under the executions in these cases the sheriff levied on 200 acres of land as the property of Branyan, the defendant in execution, and was about to sell the same on salesday of December of that year, when the plaintiffs commenced this action to enjoin the sale, upon the ground that the land levied on was not the property of the defendant, Branyan ; and the following facts were admitted :

1. That some time previous to 1885 the defendant, Branyan, executed mortgages of the said tract of land, two or more to the plaintiffs, and another to one H. P. McGhee, to secure debts due by him to the mortgagees respectively. These mortgages were regularly recorded in the proper office at Abbeville.

2. That on January 15, 1885, the plaintiffs, who live in Anderson County, inquired of Mr. DuPre, the sheriff of Abbeville County, by letter, whether there were any judgments against Branyan, and were informed that there were none, but, as before

stated, the judgments were soon after (February) recovered and entered.

3. That on April 21, 1885, after the rendition of the judgments the defendant, "Branyan, conveyed by deed the tract of 200 acres to plaintiffs (mortgagees), subject to the mortgage of H. P. McGhee, and in satisfaction of $1,709.32 of plaintiffs' debt, the residue being secured by Branyan's wife." In this transaction (the plaintiffs expecting to have to pay the McGhee mortgage) the land was estimated at the value of $2,215, which was a fair and full price for the same. That plaintiffs thereupon delivered their said notes and mortgages to the said Branyan and caused the said deed of conveyance to be recorded in the clerk's office on April 23, 1885. At the time of this transfer plaintiffs were ignorant of any other liens upon the land, and received from the said Branyan the following written assurance :

"SOUTH CAROLINA—Anderson County.

"I, D. S. Branyan, having this day sold and conveyed to Bleckeley, Brown & Fretwell a certain tract of land in Abbeville County, containing two hundred acres, guarantee and represent hereby that no other liens exist against the said land, except one mortgage in favor of Mr. McGhee, in which there was a balance of $506, due on January 1, 1885, this settlement made to-day being based on this statement.

"Witness my hand and seal this April 21, 1885.

"(Signed)            D. S. BRANYAN.   [L. S.]
"In presence of
            "J. H. VON HOPELER."

Upon this state of facts, the Circuit Judge, holding that this case is analogous to that of *Agnew* v. *Railroad Company*, 24 *S. C.*, 18, decreed that "to the extent of the price paid by the plaintiffs to Branyan for the land, their mortgages still uncancelled on the record be set up as subsisting liens thereon as against the judgments of the defendants and prior thereto; and granted a perpetual injunction against the sheriff and the judgment creditors enforcing the executions and selling anything more than the equity of redemption of said Branyan in the lands.

From this decree the appeal comes to this court upon the following grounds:

"I. Because his honor erred in holding that upon the statement of facts agreed upon, the plaintiffs were entitled to the relief prayed for.

"II. Because his honor erred in holding that it was not the intention of the parties that the legal and equitable title should merge in the plaintiffs so as to open the way for the enforcement of intervening liens.

"III. Because his honor erred in holding that the contemporaneous instrument of writing was equivalent to a covenant or stipulation, that as against any existing liens the plaintiffs should not lose the advantage of their prior liens.

"IV. Because his honor erred in not holding that the plaintiffs had notice of the existence of intervening liens, in the records of the judgments of the defendants in the clerk's office for Abbeville.

"V. Because his honor erred in holding that the plaintiffs were not careless or negligent in their inquiry as to existing liens.

"VI. Because his honor erred in not holding that the transfer by the mortgagor to the mortgagees extinguished the latter's lien, which could not be revived by subsequent proceedings so as to defeat the liens of judgment creditors.

"VII. Because his honor erred in not holding that when the mortgagees took from the mortgagor a conveyance of the entire mortgaged property, the transfer extinguished the mortgage debt and merged the fee and equitable estate in the same persons.

"VIII. Because his honor erred in not holding that although there may be fraud in the mortgagor, equity will not prevent a merger, when intervening lienees are innocent of the fraud," &c.

It must be taken to be settled in this State by a long line of adjudications both in law and equity, "that a mortgagee who buys the estate under mortgage, not under process of foreclosure, extinguishes the debt or claim with lien on the property." *Ex parte City Sheriff*, 1 *McCord*, 399 (1821); *McClure* v. *Mounce*, 2 *Id.*, 423 (1823); *Schnell* v. *Schroder*, *Bail. Eq.*, 338 (1831); *McLure, Brawley & Co.* v. *Wheeler*, 6 *Rich. Eq.*, 343 (1854); *Allen* v. *Richardson*, 9 *Id.*, 53 (1856); *Trimmier* v. *Vise*, 17 *S. C.*, 503 (1882); *Devereux* v. *Taft*, 20 *Id.*, 555 (1883). And

it makes no difference whether the mortgagor sells himself or it is sold by legal authority; the consequences are precisely the same. As said by Chancellor Dunkin in *McLure, Brawley & Co.* v. *Wheeler, supra:* "Purchasing the equity of redemption, a stranger would take the land subject to the obligation to discharge the encumbrance. It was ruled in *Schnell* v. *Schroder, supra* (and the doctrine has been since repeatedly recognized), that a purchase of the equity of redemption by the mortgagee extinguishes the mortgage debt; and that the effect was the same whether the purchase was directly from the mortgagor or from the sheriff under an execution against him."

So far as the mortgage debt is concerned, we can see that, after the purchase of the equity of redemption, the mortgagee cannot enforce it against himself, and therefore the purchase may be regarded as payment or extinguishment of the mortgage debt; but, as it seems to me, it is not so clear how the conveyance of the land in payment should not only extinguish the debt and mortgage, but go further and destroy itself, thus clearing the way for subsequent liens precisely as if the debt had been paid *aliunde.* On account of this seeming hardship, it has been held that the mortgagee, thus purchasing the equity of redemption, may set up the prior mortgage against subsequent encumbrances, if the parties at the time of the transfer intended and covenanted to prevent merger and to keep the mortgage open. See *Agnew* v. *Railroad Company*, 24 *S. C.*, 18, and authorities. So that the real question in this case is, whether the facts as to the intention of the parties bring it within the principle announced in the case of *Agnew* v. *Adams, supra.*

We have considered the agreed statement of facts with care, and we regret to say that we cannot see any evidence that these parties covenanted or intended to covenant that the mortgage should remain open. If the facts here can be regarded as making out or "equivalent to" such a covenant, we cannot imagine a case in which it could not be done. Perhaps that, in my view, would not be unfortunate; but we are bound to administer the law as we find it—at all events, until it is changed by the law-making power.

On April 21, 1885, the mortgagor and mortgagees had "a set-

tlement." The amount ascertained to be due upon the mortgage-debts, including that of McGhee, was ascertained, and "in satisfaction" of the aggregate amount, the mortgagor, Branyan, made an absolute and unconditional conveyance of the land mortgaged to the plaintiff's mortgagees, which was recorded; and at the same time "the plaintiffs delivered their said notes and mortgages to the said Branyan." Does this not rebut any possible presumption that they intended to keep the mortgage open? It is true that Branyan at the same time executed "an assurance and guaranty" that there was no other lien upon the land; but we do not see that such guaranty afforded any evidence that the parties intended to leave the mortgage open, but, as it strikes us, rather tended to show the contrary—that, knowing the danger of other liens, but relying upon Branyan, there was no reason for leaving it open, and the notes and mortgages could be given up as a finality.

That assurance was only a personal covenant of the debtor, really little more than a reaffirmation, in solemn form, of the covenants of warranty in his deed of conveyance, which included, among others, the covenants of "quiet enjoyment" and "free from encumbrances." *Kerngood* v. *Davis,* 21 *S. C.,* 210. There is no doubt the guaranty was false, and probably misled the plaintiffs, but they should not have relied upon Branyan's representations. The entry of the judgments in the proper office at Abbeville was constructive notice to all the world. True, the plaintiffs had applied by letter to the sheriff of Abbeville in the month of January preceding to ascertain whether there were in the office any judgments against Branyan, and received the information that there were none, which at that time was true; but by law there was a term of the court at Abbeville in the month of February, when judgments might be, and in fact were, obtained against the said Branyan. It seems to us that being already affected with constructive notice, a letter of inquiry to the sheriff more than three months before the purchase can hardly be considered such vigilance as the law requires. We feel constrained to hold that the parties made no covenant that the mortgages should remain open, and as a consequence the case must fall under the general rule before stated, which is so well settled.

We cannot venture to go further in relieving a mortgagee who purchases the mortgaged property than was indicated in the case of *Agnew* v. *Railroad Company, supra.*

It is the judgment of this court, that the judgment of the Circuit Court be reversed.

In this case a petition was filed asking for a rehearing of the case upon "the grounds heretofore considered" and upon several "additional grounds." Upon this petition the court endorsed the following order *per curiam* on May 16, 1887: We have carefully considered this petition, and the various points therein made; but as it does not appear that any material fact or principle involved was overlooked in our previous decision, there is no ground for a rehearing. The petition is dismissed.