## M. S. BAILEY & SONS v. WOOD.

1. JUDGMENT—MORTGAGES—TWO FUNDS.—Where a debtor has two tracts of land, on one of which there are several mortgages, under the two-fund doctrine a judgment obtained in 1897 on a contract made in 1894 must first exhaust by execution the tract of land which these mortgages do not cover.

   *Mr. Justice Woods thinks the judgment debtor should not be required to resort to sale by execution.*

2. SUBROGATION.—MORTGAGE covering two tracts of land purchased by purchaser of one to perfect his title, cannot be collected entirely out of the other tract, in absence of agreement between mortgagee and assignee to leave it open for protection of assignee's title.

   *Mr. Justice Woods reserves his opinion on this proposition, holding it is not necessarily involved in this case.*

3. IBID.—Where a mortgage covers two tracts of land, one is sold, proceeds applied to the mortgage debt, leaving balance due, satisfaction is entered as to tract sold, the purchaser of the tract sold has no equity to compel the mortgagee to pay balance due and secured by the second tract on a judgment which has been decreed to be paid out of tract sold under two-fund doctrine at instance of mortgagees of unsold tract.

Before TOWNSEND, J., Laurens, June, 1904.    Affirmed.

Action by M. S. Bailey & Sons against Lula M. Wood and others.   The report of the referee is as follows:

"This case was referred to me by the order of this Court, which directed me 'to take and report the testimony in the case to the Court, ascertain and report the amount due, if any, upon the various alleged liens set up in the case upon the different tracts and parcels of land affected thereby, with leave to report any special matter, and decide any issues of law and fact.'   In pursuance of this order, I held a reference in the case on the 13th instant and took the testimony, and submit the same herewith as a part of this report.

"The action was commenced April 9th, 1902, by M. S. Bailey & Son, plaintiffs, against W. A. Lesley and others, defendants, for judgment on a note made by the said Lesley, payable to the order of certain persons, the indorsers thereof, at the banking house of plaintiffs, and discounted by said

plaintiffs, and to foreclose a mortgage of real estate executed by said Lesley to indemnify the indorsers of said note and to secure the payment thereof.

"The defendants, W. J. Ballentine, John M. Wood, E. G. Mitchell, W. A. Nichols, John D. Sullivan, and John F. Bolt, are made parties as indorsers of the said note, and they make no answer to the complaint.

"The defendants, B. B. Barker, the Globe Phosphate Company, Mrs. M. F. Hollingsworth and Dr. R. F. Smith, as administratrix and administrator of the estate of C. L. Hollingsworth, deceased; Mrs. A. R. Ansel and Mrs. Lula M. Wood and F. L. Bramlett are made parties as claiming interest by liens, or otherwise, in the land mentioned in the complaint. All of these defendants, except Barker, answer the complaint, setting up their various claims and liens.

"The defendant, W. A. Lesley, answers the complaint, admitting the allegations thereof, that he gave the several mortgages referred to therein, and that the same are still due; but says as to 'the judgment obtained against him by the defendant, the Globe Phosphate Company, he claims that he is entitled to his homestead as against said judgment and he hereby sets up his claim to the same.'

"It appears that the said W. A. Lesley became the owner of the tract of land mentioned and described in the complaint as Rocky Mount place, some time prior to 1892, and that on the 28th January, 1892, he made his promissory note in writing, whereby he promised to pay B. B. Barker, on or before the 1st of December next thereafter, the sum of $110, and on the same day he executed to the said B. B. Barker a mortgage of the said Rocky Mount place, to secure the payment of said note.

"On the 22d day of October, 1897, the Globe Phosphate Company recovered and duly entered a judgment in this Court upon a debt contracted May 2d, 1894, against the said W. A. Lesley and others, in the sum of $652.52, and $19.15 costs.

"On the 30th December, 1897, the said W. A. Lesley made his three promissory notes, whereby he promised to pay C. L. Hollingsworth, or bearer, the sum of $100 upon each of said notes, in one, two and three years, respectively, 'with interest from date at the rate of eight per cent. per annum, computed and made principal annually until paid, and ten per cent. of the whole indebtedness, including interest, for attorney's fees' if collected by suit; and on the same day he executed his mortgage of the said Rocky Mount place, and on an undivided one-sixth interest in a tract of land in Pickens County, to secure the payment of the said notes. The said C. L. Hollingsworth is dead, and the defendants, Mrs. M. F. Hollingsworth and Dr. R. F. Smith, as the duly appointed administratrix and administrator of his estate, have foreclosed said mortgage on the one-sixth interest in the land in Pickens County, and have realized therefrom the sum of $83.55, which is credited upon the note which was due at one year, as $75.20, and $8.35 as commissions.

"On the 5th day of January, 1898, the said W. A. Lesley purchased of one W. G. Gambrell the tract of land mentioned in the complaint as the 'South place,' and on the same day he borrowed of Mrs. A. R. Ansel, then Mrs. A. R. Harris, the sum of $2,300, to pay for said place, and to pay a mortgage on the Rocky Mount place; and on that day made his five promissory notes in writing in the sum of $460 each, payable to the said Mrs. A. R. Ansel (Harris) in one, two, three, four and five years, respectively, 'with interest from date at the rate of eight per cent. per annum, computed and made principal annually until paid;' and ten per cent. of the whole indebtedness, including interest, for attorney's fee, if collected by suit, and executed his mortgage of the said South place and the Rocky Mount place to secure the payment of the said notes. He also executed to Mrs. Ansel (Harris) a chattel mortgage as an additional security to said notes; and the chattels have been sold, and the amount realized thereby has been credited on the said debt, viz: $90.

"On the 17th day of October, 1900, the said W. A. Lesley sold the said South place to James H. Bramlett for the sum of $1,700, and the purchase money was paid over by the said Bramlett to Mrs. A. R. Ansel, who applied the same to her mortgage debt, paying in full the three first notes, and making a credit on the fourth one of $97.22, and the said South place was released by Mrs. Ansel from the lien of said mortgage.

"On the 1st May, 1901, the said James H. Bramlett died intestate, survived by the defendants, F. L. Bramlett and Mrs. Lula M. Wood, as his only heirs at law, who agreed upon lines for the partition and division of his lands between them, including the South place, of which F. L. Bramlett took possession at some time prior to January, 1902, and about the 12th February, 1902, they exchanged deeds, when the said F. L. Bramlett became the sole owner of the said South place.

"On the 30th December, 1899, the said W. A. Lesley executed and delivered to W. L. Gray & Co. his mortgage covering the Rocky Mount place and the South place to secure an indebtedness of $593.66, and also a mortgage of personal property to secure $393.61 of the same indebtedness. These papers were assigned by the said W. L. Gray & Co. on the 11th day of January, 1902, to F. L. Bramlett and May B. Wood, being the defendant, Mrs. Lula M. Wood, in consideration of the payment by them of the sum of $381.62, as the balance due upon said indebtedness; and the said F. L. Bramlett and Mrs. Lula M. Wood paid said sum and procured the assignment of the mortgage to be made to them for the purpose of saving the cost of foreclosure of the mortgage, which as the witness says W. L. Gray & Co. were about to do; and to protect their title to the South place, and with the intention of getting the amount so paid out of the Rocky Mount place.

"On the 5th December, 1900, the said W. A. Lesley made his note, whereby he promised to pay on the 1st December

next after said date, to W. J. Ballentine, J. M. Wood and E. G. Mitchell, or order, at the banking house of M. S. Bailey & Son, the sum of $110, with interest after maturity at the rate of eight per cent. per annum, and ten per cent. as attorney's fee, if collected by suit; and said 5th December, 1900, he executed to said Ballentine, Wood and Mitchell. to secure them as indorsers of said note, and one other note; and to secure the payment of said notes, a mortgage of the said Rocky Mount place.

"The said W. A. Lesley was the head of a family, and resident in this State, living upon the said Rocky Mount place in 1897, and some time prior to that time, and since until several months ago; and steps were taken in November, 1902, to set off and admeasure to him a homestead in said Rocky Mount place under the execution issued upon the Globe Phosphate Company's judgment; but whether the proceedings were regular or completed—filed in the office of the clerk for record—does not appear, since the original record thereof has not been produced. The said W. A. Lesley, though still the head of a family, is not now a resident of this State, having moved to the State of Tennessee, of which latter State he is now a resident.

"Thus it is seen that we have a state of facts giving rise to conflicting equities between the debtor, and the aforesaid judgment and mortgage creditors. The plaintiffs, whose mortgage covers only the Rocky Mount place, ask that the judgment creditor, and those mortgage creditors whose mortgages cover both the Rocky Mount and South tracts, be required to exhaust the latter tract, if need be, before they are permitted to participate in the fund that may be derived from a sale of the Rocky Mount place—thus invoking what is familiarly called the two-fund doctrine. And they also contend that the mortgage which was assigned by W. L. Gray & Co. to the defendants, F. L. Bramlett and Mrs. Lula M. Wood, has been discharged in law by way of merger—so far, at least, as the South tract of land's liability thereunder

is concerned, they being the owners of the fee at the time they became the owners of the mortgage. The Globe Phosphate Co. asks that the land be sold and its judgment paid according to its legal rank. The defendant, W. A. Lesley, asks that he be allowed his homestead against said judgment. The personal representatives of the estate of C. L. Hollingsworth, deceased, and Mrs. Ansel, claim their legal rank under their respective mortgages, and the defendants, F. L. Bramlett and Mrs. Lula M. Wood, also claim their legal rights under the mortgage assigned to them by W. L. Gray & Co.; that they are subrogated to the rights of the said W. L. Gray & Co., under said mortgage, and deny that said mortgage is discharged in law—contending that it was the intention of the parties at the time of the assignment that said mortgage should protect them in their title to the South tract of land, as against other liens, and that they have the right to subject the Rocky Mount tract to the payment of the whole amount due them as assignees of said mortgage. They take the position also that at the time of said assignment, F. L. Bramlett was the sole owner of the South tract of land, and that, therefore, there could not, in any event, be a discharge or extinguishment of said mortgage debt beyond one-half of such proportion thereof as the South tract may be liable for; and they further contend that the South tract was the homestead of the said W. A. Lesley, and as such is free from the lien of the judgment of the Globe Phosphate Co., and that as the purchase money paid for the South tract by their ancestor, James H. Bramlett, was applied to the mortgage held by Mrs. Ansel, and the said tract released from the lien thereof, they are subrogated to the rights of Mrs. Ansel under said mortgage, and that equity will decree said mortgage not extinguished, but still open and alive for the protection of the title to said tract of land; and with the idea, it seems, that said mortgage was the prior lien on said South tract.

"I confess to some difficulty in reaching a conclusion, and a determination of these conflicting questions.

"First, however, has W. A. Lesley now a right of homestead in the Rocky Mount place? Was his homestead in the Rocky Mount place, or the South place, while he was a resident of this State, and at the time the judgment of the Globe Phosphate Co. was recovered, or when the debt upon which the judgment was founded was contracted? The Constitution of 1868, and amendment of 1880, and the statutes enacted thereunder, by which the right here is governed, provide for the exemption 'from attachment, levy and sale under any mesne or final process, issued from any Court, to the head of any family *residing in this State* (italics mine) a homestead in lands, &c.' According to the testimony, W. A. Lesley was entitled to a homestead in the Rocky Mount place at the time the said judgment was recovered, and when the debt was contracted. He did not then own the South tract. His legal right to such homestead in the Rocky Mount place at that time was not thereafter transferred to the South place, so far as I am able to see. Besides, it seems that he did not claim a homestead in the South place; but steps were taken toward setting off to him such homestead in the Rocky Mount place, as we have seen, and he now asks that he be allowed his homestead, which could only be in the Rocky Mount place, if allowed at all. Is he entitled to it now? In the case of *Trimmier* v. *Winsmith,* 41 S. C., 109, 19 S. E., 283, the Court says (on page 116) : 'We will say that, under the construction given the 32d section of article II., of the Constitution, in *Chalmers* v. *Turnipseed, supra,* the exemption, if entirely regular and legal, would have ceased when the family of the deceased, *as residing in this State, ceased to reside either from death or removal'* (italics mine) ; and the Court further held, to quote syllabus 4, 'A creditor having acquiesced in a homestead set apart under his execution to his debtor, is estopped from afterwards assailing the exemption as unconstitutional, but he is not estopped

from levying and selling this homestead when by death and removal of the debtor and his family, the conceded right to homestead has ceased to exist.' The proof in this case is that the debtor, W. A. Lesley, has removed from this State, and I, therefore, conclude, under the authorities above cited, that his right of homestead has ceased to exist, and that the whole of said Rocky Mount place is subject to the lien of said judgment.

"What, then, are the rights and equities as between this judgment creditor and the mortgage creditors?

"There is no question in regard to the mortgage to B. B. Barker. It is conceded to be the first lien on the Rocky Mount tract. But as between this judgment creditor and the other mortgage creditors, who has priority, as far as that tract is concerned? We have seen that this judgment was founded upon a debt contracted prior to the Constitution of 1895, and the question of the right of homestead against it is governed by the law of force when the debt was contracted, to wit: the Constitution of 1868, as amended in 1880—*Trimmier* v. *Winsmith, supra*, and we, therefore, haven't the language of the Constitution of 1895 to contend with, to the effect that 'The title to the homestead to be set off and assigned shall be absolute and be forever discharged from all debts of the said debtor then existing, or thereafter contracted,' whatever that language might mean, if it was applicable to this case. And it has been held in several cases in construing the Constitution of 1868 as amended in 1880, and the acts thereunder on the subject, that 'their only effect is to exempt certain property from levy and sale, without affecting or changing in any way the character of the estate therein. In other words, a certain portion of the property of the head of the family, as it already exists, so far as the estate therein is concerned, is set aside and walled in, so to speak, as a homestead against invasion by a process from the Court.' *Chalmers* v. *Turnipseed,* 21 S. C., 136, cited and approved in *Trimmier* v. *Winsmith, supra*. This being true,

it seems to me that the right to enforce the judgment upon the homestead being denied by the law so long as the right of homestead existed, it was merely in abeyance, and that since the homestead right has ceased, the judgment takes rank as a lien on the land as of the time of its entry.   It is, therefore, next in priority to the Barker mortgage.   But the other mortgage creditors, to wit: the plaintiffs, the estate of Hollingsworth and Mrs. Ansel, say that as this judgment has a lien upon the South tract as well as the Rocky Mount tract, while they have a lien only upon the latter tract, they have an equity to ask, and require that it shall be paid from the South tract, if necessary, to the end that they may be fully paid, if possible, from the Rocky Mount tract.   I think this position is sound, under the cases of *Bank* v. *Harbin,* 18 S. C., 425, and *Bowen* v. *Barksdale,* 33 S. C., 142, 11 S. E., 640, provided it is not overridden by other and higher rights, so far as the South tract is concerned.   How, then, will this affect the rights of the defendants, F. L. Bramlett and Mrs. Lula M. Wood, under their contention that they are entitled to subrogation to the rights of Mrs. Ansel under her mortgage, so far as it affected the South tract.   I am inclined to think that, under the authorities cited by counsel, this was a case in which the ancestor of these defendants, James H. Bramlett, was entitled to subrogation to Mrs. Ansel's rights under the mortgage, so far as those rights went, and that these defendants are entitled to the benefit of the right which accrued to him.   But how far did the rights of Mrs. Ansel under the mortgage extend as against the Globe Phosphate Company's judgment?   That judgment existed at the time W. A. Lesley bought and acquired the title to the South tract, and although he executed the mortgage thereon on the same day that he acquired the title thereto from Gambrell, and a portion of the money for which the mortgage was given was used to pay the purchase money to Gambrell, the mortgage did not become a lien upon the land precedent to the lien of the judgment which attached the moment the

title vested in Lesley, and took equal rank with the mortgage, for the mortgage being given to a third party, and not to the vendor, cannot be classed as a purchase money mortgage. *Calmes* v. *McCracken,* 8 S. C., 87. So that this mortgage and judgment bound the South tract *pro rata*—in the proportion that the value of that tract bore to the sum of the amounts of the said mortgage and judgment debts on 5th January, 1898. Taking the value of the South tract at $1,700, the amount paid for it, as testified to by James H. Bramlett, and making the calculation on the basis indicated, the judgment would share therein to the extent of $388.33.

"As to the contention on the part of said F. L. Bramlett and Mrs. Lula M. Wood, that they are entitled to be subrogated to the rights of W. L. Gray & Co., under the mortgage which the latter assigned to them, and that there is no merger, or extinguishment of any part of the mortgage debt by reason of their becoming the owners of the mortgage, and at the same time, being the owners of the fee in a portion of the mortgaged property, to wit: the South tract, under the authority of the cases of *Hull* v. *Young,* 29 S. C., 64, and *Trimmier* v. *Vise,* 17 S. C., 499, I must conclude that the mortgage debt was extinguished *pro tanto,* and the balance of the debt only can be enforced against the remaining portion of the mortgaged property, to wit: the Rocky Mount tract, as against the rights of the other mortgage creditors on that tract. At the time of the assignment by Gray & Co. to them, although the lines for a partition of the lands of their father's estate between them had been agreed on, and it seems that F. L. Bramlett was in possession of the South tract, yet as the title was then in them jointly, and did not vest solely and entirely in F. L. Bramlett until the deeds were made after the assignment, it seems to me the mortgage debt was extinguished to the extent of the amount thereof that the South tract was liable to pay, which was such proportion thereof as the value of that tract bore to the entire mortgaged property. I find by a calculation on this basis

that the South tract was liable for $185.35, and the Rocky Mount tract was liable for $196.27 of the amount paid by said F. L. Bramlett and Mrs. Lula M. Wood to W. L. Gray & Co., which latter amount, with interest thereon at eight per cent. per annum from the 11th January, 1902, may be enforced against the Rocky Mount tract."

To this report all parties excepted and the Circuit Judge made the following decree:

"This action was commenced in the Court of Common Pleas for Laurens County, in said State, on April 9th, 1902, by the plaintiffs against the defendants, to foreclose a mortgage executed by W. A. Lesley on the Rocky Mount tract of land, on December the 5th, 1900. All persons claiming to have liens upon the said tract of land are made parties to this action in order that there might be a complete determination of the rights of all the persons interested, and that the purchasers might take a good title under the sale through the Court. The defendants all have answered, setting up their several rights and equities. The case was referred to Mr. C. D. Barksdale, as special referee, to take the testimony and decide all the issues of law and fact.

"The Rocky Mount tract has been sold by order of this Court, therein reserving the fund subject to the rights of the parties to be adjudicated in this decree. The referee has filed his report with the testimony, and the case comes on for a hearing before me on said report of the referee and exceptions thereto filed.

"I adopt the statement of facts as found by the referee, and in the main adopt his conclusions of law, but I sustain the exceptions as to the homestead and the Globe Phosphate Company's judgment, filed thereto by the plaintiff's attorney and by the attorney for the defendants, Mrs. A. R. Ansel, R. F. Smith and M. A. Hollingsworth. I shall attempt to give briefly my reasons for this modification.

"At the commencement of this action, and ever since January the 5th, 1898, the defendant, W. A. Lesley, owned

two tracts of land in Laurens County, the Rocky Mount tract, containing 156 acres, and the South or Gambrell place, containing 173 acres.

"The defendant, W. A. Lesley, in his answer sets up claim of homestead and the appraisers set off him a homestead in the Rocky Mount tract of 111 acres, which they appraised at $1,000, thus dividing the Rocky Mount tract into two divisions, one containing 111 acres, and the other forty-five acres, and the said tract was sold in these two divisions, separately, the fund being reserved for distribution under this decree.

"On January 28th, 1892, W. A. Lesley executed his mortgage on the entire Rocky Mount tract to B. B. Barker, and the referee finds that there was due on this mortgage the sum of $136.65 up to October the 28th, 1903, and as there are many subsequent and different liens, this amount should be paid out of the proceeds of the sale of the forty-five acres of the Rocky Mount tract, after paying the cost and expense of said sale, and the cost of this action and the cost of setting off said homestead.

"The next claim is that of the Globe Phosphate Co., which is a judgment entered against W. A. Lesley and others on October 22d, 1897, for $652.52 and $19.15 costs.

"There is no evidence whether Lesley's codefendants are solvent or not. Upon payment of said judgment W. A. Lesley or his assigns will have the right of contribution against the said codefendants in execution. As there are subsequent liens upon the Rocky Mount tract more than sufficient to exhaust the entire proceeds of the sale, the judgment of the Globe Phosphate Co. may be enforced against the South tract, and for this purpose this creditor has the plain remedy of proceeding to collect the judgment by the sheriff under execution, and it is so ordered. The South tract is amply sufficient to pay in full the Globe Phosphate Co.'s judgment, and this tract must be first exhausted by said judgment creditors before it can be allowed to seek any part of the

proceeds of sale of the other tract, even in case of a deficiency on the judgment debt after selling and applying the proceeds of the South tract; and the said Globe Phosphate Co. is allowed sixty days from the filing of this decree to seek relief against the proceeds of the Rocky Mount tract, in case of deficiency, after exhausting the South tract; but after sixty days the proceeds of the Rocky Mount tract shall be forever exempt from this judgment. It was never a lien upon the homestead, which has always been claimed and has been finally located in the 111 acres of the Rocky Mount tract. The other parties have liens by way of mortgage upon the entire Rocky Mount tract, and under the equity of the two-fund doctrine, have the right to throw the entire judgment debt upon the South tract of land. The debt upon which this judgment was based was contracted May 2d, 1894, and the question of homestead and the two-fund doctrine must be governed by the Constitution then of force. *Cantrell* v. *Fowler,* 24 S. C., 424; *Kitchen* v. *McCarley,* 26 S. C., 1, 2 S. E., 199; *Builderback* v. *Boyce,* 14 S. C., 528; *Agnew* v. *Adams,* 15 S. C., 44; *Bank* v. *Harbin,* 18 S. C., 425.

"The Constitution exempts the homestead from the lien of the judgment before it was assigned, as well as section 310 of the Code of Procedure, and even if the homestead was finally abandoned by removal from the State, this could not affect the decision, because all of the mortgages had attached to the Rocky Mount tract before Lesley's removal from the State.

"The next lien in order of date on Rocky Mount tract is a mortgage of C. L. Hollingsworth, executed December the 30th, 1897, and this mortgage should be paid second out of the proceeds of Rocky Mount tract—that is, next after the Barker mortgage, from the proceeds of the forty-five acres, and if a deficiency remain, then from the 111 acre tract. This mortgage, under the two-fund doctrine, has the right to require the Globe Phosphate Co. first to exhaust the South

tract, if the Rocky Mount is not sufficient to pay both, which it is not.

"The next lien in order of date on the Rocky Mount tract is a mortgage to Mrs. A. R. Harris, now Mrs. A. R. Ansel, executed on January the 5th, 1898, the balance due on which, as reported by the special referee, was on October the 27th, 1903, the sum of $874.35, including attorney's commission, and this mortgage should be paid third out of the proceeds of the sale of the Rocky Mount tract. This mortgage, under the two-fund doctrine, has also the right to require the Globe Phosphate Co. first to exhaust the South tract.

"On January the 5th, 1898, W. A. Lesley purchased the South tract and gave mortgage on both tracts to Mrs. A. R. Ansel for the sum of $2,300, and on December the 30th, 1899, Lesley executed a mortgage on both tracts of land to W. L. Gray & Co. These two mortgages covering both tracts could not invoke the two-fund doctrine, but both had a prior lien on the 111 acre tract, the homestead, in preference to the said judgment.

"On October the 17th, 1900, affairs became more complicated, when J. H. Bramlett became the purchaser for the sum of $1,700 of the South tract, and paid to Mrs. Ansel the said amount, and she released her said mortgage from said tract. There is no evidence to the effect that Mr. Bramlett intended to keep alive the Ansel mortgage, so as to protect his title, or that he intended to be subrogated to the rights of Mrs. Ansel against the South tract, but it appears that the reverse is the case, as he had entered upon the record of said mortgage in the clerk's office on October the 17th, 1900, the release of Mrs. Ansel of the South tract of land. Mr. Bramlett was not in the exercise of due diligence in searching the clerk's office at Laurens for judgments and mortgages standing open against the grantor. The court of equity does not release those who do not use due diligence in the purchase of property, and does not shield them from results against which common prudence might have guarded,

4—71

when not induced by misrepresentation, over-reached by fraud, nor the victim of undue influence. I do not see how J. H. Bramlett in his lifetime, nor his heirs at law now, could have evoked the doctrine of subrogation. If he had taken an assignment of the Ansel mortgage to himself, or had the equitable assignment by subrogation, the legal doctrine of merger would destroy the actual or equitable assignment in the absence of an express agreement to the contrary, and of this there is no testimony.

"On December 5th, 1900, W. A. Lesley executed a mortgage now held by the plaintiffs upon the Rocky Mount tract, and on January the 11th, 1902, W. L. Gray & Co. assigned their mortgage to F. L. Bramlett and Lula M. Wood; while the testimony is to the effect that the assignees procured said assignment with intent to save the cost of a threatened foreclosure and to protect their title to the South tract, yet the testimony falls short of showing that such intention was the result of an express agreement with W. L. Gray & Co. *Agnew* v. *Railroad,* 24 S. C., 18; *Bleckeley* v. *Branyan,* 28 S. C., 448, 6 S. E., 291. The recent case of *Glenn* v. *Rudd,* 68 S. C., 112, explains those cases by holding that such express agreement of the parties need not be incorporated in the instrument of conveyance, but it may be by parol or in separate writing. The mortgage of the plaintiffs was in existence when F. L. Bramlett and Lula M. Wood purchased the Gray mortgage. This mortgage ought not to be referred to the Rocky Mount tract alone for payment, as the plaintiffs have a counter equity, to have the whole debt referred to the South tract. There is an equity against an equity, and when the equities are equal, the law will prevail. Therefore, the referee properly held that the W. L. Gray & Co. mortgage should be charged ratably to the South tract and to the Rocky Mount tract. The referee's report is, therefore, in all respects confirmed, except as to the Globe Phosphate Co.'s judgment and the homestead question."

From this decree the Globe Phosphate Co. and Lula M. Wood and F. L. Bramlett appeal. The former alleging error in requiring it to collect its judgment out of South tract, and in ordering the Hollingsworth, Ansel and W. L. Gray mortgages to be paid out of Rocky Mount tract before its judgment. The latter alleging error in refusing them subrogation to the rights of the W. L. Gray & Co. mortgage; in refusing to make Mrs. Ansel pay the Phosphate Company's judgment; in adjudging W. A. Lesley entitled to homestead; in not decreeing that South tract was only liable for its *pro rata* share of Phosphate Company's judgment; and in holding that they were not entitled to be subrogated to the rights of the Ansel mortgage.

*Mr. N. B. Dial,* for Phosphate Company, cites: 44 S. C., 18; 28 S. C., 448; 33 S. C., 132; 41 S. C., 190; 21 S. C., 136.

*Messrs. Simpson & Cooper,* for Wood and Bramlett, cite: *As to subrogation to rights of Ansel mortgage:* 63 S. C., 93; 84 Me., 291; 65 Cal., 8.

*Mr. F. P. McGowan,* for plaintiffs, and *Mr. M. F. Ansel,* for defendants, contra.

March 7, 1905. The opinion of the Court was delivered by

MR. JUSTICE GARY. This Court does not deem it necessary to add anything to what is said in the decree of the Circuit Judge.

The exceptions are, therefore, overruled and the decree affirmed, for the reasons therein stated.

MR. JUSTICE WOODS. I concur in the conclusion that F. L. Bramlett and Lula M. Wood, as heirs at law of J. H. Bramlett, are not entitled to be subrogated to the rights of Mrs. Ansel as against the incumbrances senior to his deed,

by reason of his payment of the purchase money of the South tract on Mrs. Ansel's mortgage; because he was grossly careless in making no examination of the records for other incumbrances (see extended note to *American Bonding Co.* v. *Bank,* 99 Am. St. Rep., 482) ; and for the further reason that it was not proved J. H. Bramlett supposed he was getting a good title when he paid the purchase money. *Griffin* v. *Griffin,* 70 S. C., 220.

I do not wish at this time to assent to the view of the Circuit Judge, that a release on the mortgage and the lack of an agreement to keep it open for the benefit of the purchaser would be fatal to the claim of subrogation, because the authority of the case of *Bleckeley* v. *Branyan,* 26 S. C., 424, 2 S. E., 319, has been much shaken by the subsequent cases of *Michalson* v. *Myrick,* 47 S. C., 297, 25 S. E., 162; *Lipscomb* v. *Goode,* 57 S. C., 182, 35 S. E., 495, and *Powell* v. *Patrick,* 64 S. C., 190, 41 S..E., 894. The point decided in *Bleckeley* v. *Branyan, supra,* is not necessarily involved here, and as to that I express no opinion.

I think the Circuit Judge was in error in requiring the Globe Phosphate Co. to go out of court and enforce its debt by levy and sale under execution. All parties had been brought into Court to have their equities adjusted as to both tracts of land, and all who were creditors, including the judgment creditor, asked for the sale of the lands by the Court for satisfaction of their debts. The Court undertook to adjudge the rights of the parties and all sales of lands contemplated by the decree should have been made by the officer of the Court and under its direction.

On all other points I concur generally.